# FREDERICK and ADAMS v DEPARTMENT OF CORRECTIONS, etc.

## Case No. 86-2879R

State of Florida, Division of Administrative Hearings

October 9,1986

### APPEARANCES OF COUNSEL

**James L. Frederick** and **Douglas L. Adams,** pro se.

**Julia Forrester,** Assistant Attorney General, Department of Legal Affairs, for respondent.

### OPINION

ARNOLD H. POLLOCK, Hearing Officer.

### *FINAL ORDER*

Pursuant to the Amended Notice of Hearing furnished to the parties by the undersigned on August 21, 1986, a hearing was held at the Union Correctional Institution, Raiford, Florida, on September 3, 1986,

before Arnold H. Pollock, a Hearing Officer with the Division of Administrative Hearings. The issue for consideration was whether Department of Corrections Rules 33-3.007 and 33-22.006(15) are invalid as abuses of delegated legislative authority.

## BACKGROUND INFORMATION

On July 29, 1986, the Petitioners, James L. Frederick and Douglas L. Adams, both inmates at the Union Correctional Institution, filed a Petition for Determination of the Invalidity of An Existing Rule contesting the effectiveness or validity of Rule 33-3.007 and Rule 33-22.006(15), *Florida Administrative Code*, dealing with inmate grievances and alleging that the rule is invalid on the basis that it is contrary to its statutory grant of authority and an arbitrary and capricious abuse of discretion. The petition was forwarded to the Division of Administrative Hearings for the appointment of a Hearing Officer, and on August 1, 1986, the undersigned was so appointed. Thereafter, on August 6, 1986, the Petitioner, Douglas Adams, filed a Request for Leave to Amend the Petition and an Amended Petition which did not change the basic allegations of invalidity. The hearing was originally set for August 26, 1986, but at a motion hearing by telephone conference call prior to that date, a continuance was granted and the hearing set for September 3, at which time it was held as scheduled. At the hearing, the Petitioner's Motion to Amend the Petition was granted.

At the hearing, Petitioners presented the testimony of David Wilson Bell, Assistant Secretary, Department of Corrections; Hoyet D. Grace, Charles W. Bowe, Michael S. Nelson, Bryan K. Sanford, and John Bonner, all inmates at UCI; Charles W. Davis and J. J. Crews, Classification Specialists at UCI; Paul V. Gunning, Assistant Superintendent for Programs at UCI; Daniel L. Williams, an inmate at UCI; and themselves, James L. Frederick and Douglas L. Adams. Petitioners also introduced Petitioners Exhibits 1 through 19. Respondent presented the testimony of David H. Brierton, the Department of Corrections' Inspector General; and Jimmy D. Folson, Inmate Grievance Administrator for the Department. Respondent presented Respondent's Exhibit A. The undersigned also took Official Recognition of items I through VI, including sections 20.351(1)(c), 944.09(1)(d), and 944.331, *Florida Statutes*; Paragraph 40, Code of Federal Regulations 40.5; the ABA Standards on Criminal Justice; and DOAH Case No. 84-1788R Final Order.

Subsequent to the hearing, the parties presented proposed Findings of Fact which have been ruled on in the Appendix to this Final Order.

210

## FINDINGS OF FACT

1. Petitioners James L. Frederick and Douglas L. Adams are both inmates at Union Correctional Institution, and have been at all times pertinent to the issues involved in this hearing. Both have had opportunities to file grievances under the provisions of Respondent's rule governing the filing of inmate grievances, both at UCI and at other installations within the Department of Corrections.

2. In September 1985, Petitioner Frederick filed a formal grievance concerning property he had to leave at Hendry Correctional Institution when he was reassigned to UCI. The response to his grievance indicated that his property would be returned upon his release. The form on which the grievance was filed contains provisions and place for response by institution officials. The institution official in this case indicated that there was no disposition of Petitioner's complaint, but he was advised by this official that the property would be returned. Consequently, the system and the procedure appear to have worked quite well in this instance.

3. Fredericks also filed an "emergency grievance" directly to the Department of Corrections in Tallahassee on another occasion. This grievance had to do with a disciplinary report and job change for the complainant. Though Fredericks considered this to be an emergency so that he could get out after a clean ten years instead of his mandatory 25 year sentence, the grievance was returned to him with instructions to submit it at his local institution. It was determined by Department of Corrections' personnel not to be an emergency and was returned on that basis. This is an appropriate resolution of the grievance. Though it may have appeared to be an emergency to Mr. Frederick, it was not a bona fide emergency.

4. Frederick filed a third grievance involving his medical condition while at UCI. This grievance was returned to him by Mr. Williams with instructions to file informally. Apparently, Petitioner had not done so even though the procedure requires an attempt at informal resolution of a problem before the filing of a formal grievance. Mr. Williams, in his response to the Petitioner, suggested that Petitioner check with the doctor first and when this was done, the problem was resolved. THis is the grievance procedure is supposed to work, and yet it is used as the basis for an attack on the rule by the Petitioner.

5. Notwithstanding the indication by institution officials that there is a thorough orientation given to inmates on their arrival within the Department of Corrections prison system and also at the individual facilities on the operation of the grievance procedure, Frederick con-

**211**

tends that his orientation was less than complete. He was told that there was a grievance procedure, but the procedure was not explained. This complaint, even if valid, does not go to validity of the grievance procedure rule.

6. Petitioner Adams filed a grievance while at UCI on March 28, 1985, based on the fact that a letter he had written to his attorney was returned to him improperly. Adams filed an informal complaint which did not result in a satisfactory resolution and thereafter, filed a formal grievance which was returned again without a satisfactory result. Thereafter, Adams appealed in accordance with the appeal procedures built into the rule, but the appeal was not upheld. Notwithstanding the fact Petitioner did not consider the result of his appeal satisfactory, the procedure as set forth in the rule worked properly. There is no guarantee that each inmate will be satisfied with the results of his complaint nor is it a valid test of the rule that the procedure result in prisoner satisfaction.

7. Inmate Adams also filed a grievance on an unwritten shaving policy. Initially, he filed an informal complaint; then a formal grievance, which was returned stating, "without disposition" but nonetheless giving him an answer to his complaint. Again in this case, he received a response though it was not the response he wanted and his "problem" continued in both cases. Since Adams did not get the result he wanted, he felt he had to go to the court - a procedure which he calls "unnecessary litigation."

8. Adams also filed a grievance concerning the linen exchange procedure at UCI which was returned to him without disposition because he did not suggest a solution to the problem. The complaint nonetheless was answered and a position taken by administration officials, but Petitioner was not satisfied with it.

9. Adams has been a law clerk since 1980. He filed and saw numerous grievances at Baker Correctional Institute when he was there. All formal grievances at that facility were acted upon only by the Assistant Superintendent or the Superintendent, not by a coordinator as is the practice at Union Correctional Institute. To his knowledge, prior to 1983, even at Union Correctional Institute, grievances were forwarded directly to an Assistant Superintendent for resolution and answer.

10. Numerous other inmates expressed their dissatisfaction with the grievance procedure. Mr. Grace, for example, indicated that whenever he would submit a grievance it was always returned to him unanswered as inadequate and he would then take the response to inmate Adams,

212

the law clerk, to see what to do. In July 1986, he received from Mr. Williams a response to a grievance from Mr. Williams which contained instructions to seek an informal remedy. According to Grace, he had attempted to informally resolve the problem first before filing his grievance but had met with no success. When he tried to go the informal route, he was told that there was nothing that could be done for him, and it was then that he filed the formal grievance. Within the last few days prior to the hearing, Mr. Grace received a slip from Mr. Williams indicating that he should again seek informal remedy as the response to his formal inquiry. He had done that first and filed a formal grievance after no satisfaction. The response to the formal grievance was direction to seek informal remedy a second time. It appears that institution officials now have been furnished with both formal and informal grievances, and have not acted on either, but this again appears to be more of a question of local application of the procedures called for in the rule rather than a problem of rule invalidity.

11. Inmates Bowes filed grievances at Hendry Corrections Institute before coming to UCI in August of 1985. Immediately prior to his transfer, he filed an informal complaint regarding his personal property with the Assistant Superintendent there, and he was transferred to UCI before an answer could be furnished him. When he arrived at UCI, he followed up on his prior request, informally, through his classification officer, Mr. Crews. He was not able to file a formal grievance, due to a lack of availability of forms, until he came to Unit 13 at UCI where he got the proper form from other inmates. Because of the difficulty he had experienced up until that time, he filed his formal grievance direct with the Department of Corrections in Tallahassee. In response, he received a form telling him to file locally. He contends he had never been told that he had to file locally before going directly to the headquarters. When he arrived at UCI, he was required to sign an inventory slip that did not account for his misplaced property, and he was told that he had "better sign if he didn't want trouble." He considered this to be an emergency.

12. Bowes had filed grievances previously. In one, he related that he was assaulted by numerous corrections officers who were not wearing name tags, and that he was beaten during his transfer from HCI to UCI. This one was filed informally first and returned with no response. The subsequent formal grievance filed was filed directly with the Secretary because of the "peculiar" fact that he did not receive a response to the informal request. In this case, the formal grievance was returned to him denied on the basis of a technicality rather than the

**213**

merits. The peculiar circumstances he refers to are that he believes he was made to undergo reprisals for filing the informal grievance.

13. Bowes filed a third grievance when he was placed in a strip search cell for ten days. He received only a token response to his grievance which he submitted direct to the Department of Corrections. He also submitted a grievance locally regarding receipt of U.S. Government mail which had been censored. Because he felt it was privileged legal mail he refused to accept it once it had been opened and requested legal clarification. When he did this, the Corrections Officer sent to investigate took the mail, read it, and confiscated it. Mr. Bowes objected with this and afterwards was called to the Lieutenant's office and reprimanded. Prior to filing a formal grievance, he filed an informal complaint which did not result in a response. The formal grievance was returned without decision, and when he resubmitted it, it was again without a decision on the basis of a technicality.

14. Prior to his current assignment Michael Nelson was a law clerk who assisted inmates in filing grievances. He also filed several of his own. The first filing he made was informal and was denied. He then filed a formal grievance on the same subject which was also returned denied. Since the informal complaint he submitted was sent to several different officials, most of whom did not have authority to review it, he feels he was given a runaround in the resolution of his problem.

15. Along with thirteen (13) other inmates, he also filed a joint grievance about noise in one of the dormitories. This grievance was sent to an Assistant Superintendent, Mr. Hicks, but when it was returned unaccepted, the paperwork revealed that it had been reviewed by Mr. Williams, not Mr. Hicks. Mr. Williams is not at the same level of authority as Mr. Hicks.

16. Every grievance Nelson has filed that was not handled informally has been returned without action. In some cases, even where information action had previously been taken, the formal complaint was returned without action with the direction to seek further informal action.

17. Bryan Sanford, also an inmate at UCI, has filed grievances of an informal nature in reference to disciplinary reports he has received. In these cases, he was instructed to send them to the Assistant Superintendent but the response was from a Corrections Officer I (Williams). When he then submitted the formal grievance to the Assistant Superintendent, he attached the informal form, but the formal grievance was denied. Sanford, on one occasion thereafter asked Assistant Superintendent Hicks about it and Hicks denied ever having seen it. The action

here was taken by Assistant Superintendent Gunning, but it is not at all unusual that Gunning should have acted in place of Hicks.

18. Inmate Bonner has been at UCI approximately one year. Before coming to UCI, he was at New River. He has filed several grievance forms at UCI, all relating to disciplinary matters. In one case, he was deprived of 90 days gain time and locked up for 30 days at a hearing at which the complaining officer was not present. After the hearing, he sent to Corrections Officer Williams a formal grievance which was returned with instruction to seek informal review. When he did that, the response indicated that what he had complained of had happened. He thereafter resubmitted the formal grievance and it came back a second time denied for being too late.

19. This case also concerns the propriety of corrections officers reviewing, under the informal grievance procedure, disciplinary actions in which they were involved as a part of the classification team which recommended the corrective action. Classification Specialist I David has reviewed several informal grievances relating to disciplinary actions when in the matter in question, he was a part of the classification team that took the disciplinary action.

20. Inmates' complaints must be carefully scrutinized because of their obvious interest in the outcome of the proceedings. Nonetheless, a showing of a lack of concern for the proper implementation of the grievance procedure among some low level supervisors and corrections officers is clear. There is little doubt that Department of Corrections headquarters personnel, the Superintendent at the institutional level and his Assistant Superintendents along with the senior staff are fundamentally concerned with insuring that the grievance procedure works properly. They are, to a man, corrections professionals who readily recognize the potential for a working grievance procedure to diffuse potential explosive situations. They have a vested interest in insuring that the procedure works properly, for by doing so, they minimize the risk of future confrontal situations. This attitude, however, does not necessarily carry through to those individuals at the lower level of supervision who must be personally involved with the evaluation and implementation of the procedure. It is clear that the procedure itself is well designed and if allowed to work properly would do so. Unfortunately, in the implementation of the procedure at UCI, quite often difficulties arise which could well be avoided or resolved with minimal effort on the part of the lower level corrections personnel.

21. The inmate grievance program as set forth in Rule 33-3.007,

**215**

*Florida Administrative Code*, requires that the inmate first attempt to resolve his difficulty through informal request at the installation. If this does not result in a satisfactory resolution of the problem, the inmate may then file a formal grievance at the installation where he is located, and if local action is not satisfactory, the inmate may appeal denial of redress of the grievance to the Department of Corrections in Tallahassee. When this is done, the grievance is reviewed by the Inmate Grievance Administrator who responds to all grievances, both appeals and emergencies, that conform to the Department's rules and requirements set forth for the filing of grievances.

22. Each grievance is reviewed both for substance and for compliance with procedures, and either investigated (if in compliance with the requirements of the rule), or returned (if not in compliance with the requirements of the rule) with instructions as to how to properly file the grievance.

23. The institutional staff is required to investigate and respond in a timely fashion. The investigator should contact all parties and review all facts, then either provide relief or, if no relief is appropriate, say why not. The office of Inmate Grievance Administrator considers an answer which treats the issue even if denying redress as a response.

24. A situation is considered an "emergency" if an inmate is in danger of his life or irreparable harm. In the event an emergency situation is claimed to support direct filing with the DOC in Tallahassee, the administrator's office will do a preliminary investigation upon receipt. This preliminary examination will consider all relevant and stated facts. If it is decided that an emergency does not exist, that decision is communicated to the inmate. If, on the other hand, it appears a bona fide emergency does exist, the administrator will assign an investigator to conduct a formal investigation. Emergency grievances must be evaluated on the facts appearing on the appeal form itself, or through collateral information available. Because of the variables which can be involved, it is impossible to strictly define the term "emergency". However, in an apparent emergency situation, an immediate inquiry is made to see if there is the likelihood of potential harm to the inmate and a formal investigation will come later on. Normally, the majority of inmate complaints can be resolved locally through the informal process described by Mr. Folson. From those which cannot, there is the formal procedure. The Inspector General's Office conducts periodic audits of the grievance procedures throughout the Department of Corrections. It keeps a check on the process, and gets monthly reports of grievances filed to see what trends are developing.

216

25. Disciplinary actions within the Department of Corrections relating to inmates are reviewed at the secretarial level. Whereas findings and penalties imposed at the institution can be reduced but not increased, the only formal review of a disciplinary action imposed on prisoners outside of a court hearing is through the grievance procedure.

26. The Assistant Superintendent for programs at the local level (at UCI, Mr. Paul V. Gunning), does not normally get deeply involved in the disciplinary process but does get involved in the review of grievance proceedings. Before the rule was changed to provide for the current process, Mr. Gunning, along with the other assistant superintendent and the superintendent, designated a staff member to act as coordinator for grievance procedures at Union Correctional Institution. Mr. Daniel L. Williams, a Corrections Officer I at UCI was picked for this position.

27. Ordinarily, formal grievances are sent by the inmate through the inmate mail to the Assistant Superintendent's Office, where the Assistant Superintendent's secretary forwards them to the coordinator after logging them in. The grievance does not to the Assistant Superintendent. Mr. Williams evaluates it and determines if the required technicalities for filing a grievance have been met. If they have, he forwards it to the individual on the institution staff who can evaluate the complaint, and, if appropriate, provide the necessary corrective action. In the event the inmate has not followed the proper procedures and his grievance is technically incorrect, it is returned to the inmate with the instructions as to what action to take to correct the technical deficiencies.

28. According to Mr. Williams, even though there is a legal prohibition against the appellate review of a DR by a member of a team which imposed the punishment, it is the practice at UCI to refer informal DR complaints back to the chief of the team which imposed the punishment initially to consider the new evidence submitted. Once the team chief has made his comment, the form is then forwarded to the Superintendent for action since he is the only one who can take corrective action on a DR. As for other areas of inmate complaint, it would appear Mr. Williams is the clearing house and final arbiter of the inmate grievance.

29. Ordinarily, formal grievances must be filed within 30 days of the incident complained of. There is, however, in the rule provision for a waiver of this 30-day period if it can be shown that it is appropriate to do so. To bring about this waiver according to Mr. Gunning, an inmate can communicate with him verbally to send him a note or file an appeal to the central office.

217

30. Union Correctional Institutes receives an average of 153 formal grievances per month. According to Mr. Gunning, inmates are provided with an orientation to the grievance procedure during their processing at the reception and medical center. This orientation contains all the steps on the grievances and the orientation briefing is repeated when the inmate arrives at UCI. If this is true, and there is no question that the orientation is called for, the inmate should be aware of the grievance procedures and how to properly file a grievance which has a reasonable chance of receiving the appropriate attention. The testimony of these inmates called to give evidence at this hearing, however, indicates the briefing is sketchy and sporadic at best. Given the demonstrated attitude toward the rules evidenced by the lower level personnel in other areas, it is most likely that such a familiarization to the inmates is pro forma and limited at best.

31. The Department of Corrections is currently in the process of seeking federal certification of its grievance procedure. There is no requirement that the grievance procedure be certified in order for it to be legal. If certification is secured, however, the effect will be to require inmates to utilize their full administrative remedies before initiating court action. This is not, of course, why corrections officials in this state have decided to seek federal certification. Federal certification requires a thorough evaluation of the process and this will help to develop within this state the best grievance procedure system available.

32. Florida's rule and procedure have been submitted for evaluation by the Department of Justice, and the process of certification is still underway. Certain defects in the program have been identified and corrections must be made before certification is granted. These changes or corrections are presently in process. One of the changes is to provide for inmate participation in the grievance process other than as a grievant. A decision has been made in this State, however, not to put an inmate on a grievance board and this seems to be consistent with the decisions made in other states. As a result, to accomplish inmate participation, grievances will be sanitized (names stricken) and publicized throughout the system to allow inmate comment. Department of Correction officials are confident that with the changes proposed, the Florida system will be receiving federal certification in the not-too-distant future.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties and the subject matter of this proceeding.

Petitioners contest Rule 33-3.007 alleging that it is contrary to the

218

enabling statutory grant of authority. Section 944.09(1)(d), *Florida Statutes* (1985), provides that the Department of Corrections shall adopt rules governing the administration of the correctional system and the operation of the Department which shall relate to, *inter alia*, grievance procedures. The rules shall conform to Title 42, United States Code 1997E, the Civil Rights of Institutionalized Persons Act. The reference subsection of the federal code provides for the prior exhaustion of administrative remedies and states that, within the discretion of the court, civil action in the United States Courts by an adult convicted of a crime and confined in any jail, prison, or other correctional facility may not be brought until such time as the complainant has exhausted his plain, speedy and effective administrative remedies. This requirement for the exhaustion of administrative remedies may not be required if, *inter alia*, the Attorney General has certified that these administrative remedies are not in substantial compliance with certain minimum standards. These minimum standards provide for: a) an advisory role for employees and inmates of the correction facility; b) specific maximum time limits for written replies to grievances with a reason therefor at each decision level within the system; c) priority processing of grievances of an emergency nature; d) safeguards to avoid reprisals for the filing of a grievance; and e) independent review of the disposition of grievances by an individual not under the direct supervision or direct control of the institution.

A review of the rule in question here clearly shows that it is in fact in conformance with the federal statute. For example, at subparagraph (5), inmate and employee participation in the grievance process is called for by the:

". . . solicitation of written comments by inmates and employees on posted or published abstracts of grievances prior o the initial adjudication of the grievances."

Once a grievance is filed, institutional officials shall have, per subparagraph (9), up to 20 working days from the receipt of the grievance to take action and respond to it. An appeal to the Secretary of the Department must be investigated and responded to within 40 working days from receipt of the appeal.

The rule also provides for emergency processing and in fact, at paragraph (16) permits emergency grievances or grievances of reprisals to be submitted directly to the Secretary without the necessity of going through the grievance process at the institutional level.

Subparagraph (20) provides that:

"no action will be taken against inmates as a result of the submission

**219**

of a grievance unless the grievance is false or misleading. Good faith use of or good faith participation in the grievance process will not result in formal or informal reprisal against inmates."

Finally, the rule provides for an appellate review of all grievance actions by a grievance administrator working directly under the supervision of the Secretary of the Department of Corrections. This individual is at no time subject to the direct supervision or direct control of the institution superintendent.

In light of the above, it is clear that far from failing to comply with Title 42, United States Code 1997, the rule as promulgated is in direct support of and in compliance with the provisions, spirit and intent of that legislation.

Petitioners next contend that the rule is arbitrary, capricious or an abuse of discretion in that there exists no valid reason for Respondent's failure to comply with the enabling legislation, and there is no valid penological objective for Respondent to continue to apply past grievance procedures to prevent outside review.

It is difficult to conclude that Petitioners here are referring to the same rule which was the subject of the hearing attended by the undersigned. The evidence presented at the hearing which was uncontroverted by Petitioners, and a thorough examination of the rule itself clearly reflects that the rule is in compliance with the terms of the statute and the enabling legislation and that there is more than ample provision for outside review.

Admittedly informal complaints regarding disciplinary action taken against prisoners are returned to the classification board or a member thereof which heard the original disciplinary complaint. According to the institution overhead staff, this is done not to justify the action taken by the classification team, but to give the classification panel another opportunity to examine the situation in light of the inmate's presentation which is also given to it. Further, in paragraph (2) of the rule, it is provided that each inmate "shall be entitled to invoke the grievance procedure" regardless of any disciplinary classification or other administrative or legislative decision to which the inmate may be subject.

There is nothing despotic about the procedure as it is designed and while in operation it may appear less than effective, the remedy for this lies within the purview and authority of the institution superintendent. This matter has been brought to his attention and there is every likelihood to believe that corrective action can and will be taken. There is, however, no defect within the rule itself.

220

Petitioners contend that there is a conflict between the terms of paragraphs (5) and (9) of the rule in that whereas paragraph (5) purports to include inmates in the evaluation of the grievance prior to the initial adjudication, this is withdrawn by the terms of paragraph (9) which requires the Superintendent or Assistant Superintendent to respond to the grievance within 20 days. The rule calls for an original and one copy being returned to the inmate and a second copy being placed in his record. No comment is made regarding forwarding the grievance for inmate review prior to adjudication. The mere fact that the rule does not provide an exact step in the process for this inmate review does not mean that it is not done as provided for in Section (5).

The burden to establish the deficiency in the rule by evidence presented at a hearing rests with Petitioner. Petitioners had several inmates testify regarding their grievances and they themselves testified regarding their own grievances. However, there was no evidence to show that the requirements of subparagraph (5) of the rule for posted or published abstracts soliciting inmate comment had not been followed. That burden lies with the Petitioner and they have failed to carry it.

Petitioners also claim that Rule 33-22.006(15) constitutes an arbitrary, capricious and abusive exercise of delegated legislative authority in that it sets up a "sham and futile appeal procedure from disciplinary proceedings."

Subparagraph (15) of the rule, which deals with the conduct of disciplinary hearings, provides:

"Upon conclusion of the hearing, the inmate shall be informed that he may appeal the decision by means of the inmate grievance procedure. The time limit for filing a grievance pertaining to disciplinary action shall begin to run when the inmate is given written notice of the decision of the hearing officer or disciplinary team."

Petitioners claim that since the appeal filed by grievance is reviewed and adjudicated by persons who are powerless to grant any relief from disciplinary proceedings, it is a futile and illogical and useless procedure. What Petitioners are overlooking is the evidence which clearly reveals that while the appeal may be signed by the institution assistant superintendent, the decision in each case involving the appeal from disciplinary action is taken by the installation superintendent himself who does in fact have the authority to grant whatever relief is necessary.

Petitioners may have a logical basis for complaint in that the

221

appearance of the program does generate an improper conclusion. It would seem appropriate that the procedure be changed to require that action on the grievance appeal from disciplinary action be taken and signed by the installation superintendent.

Petitioners urge that both Rule 33-3.007 and 33-22.006(15) dealing with the use of the grievance procedure for the appeal of disciplinary actions be set aside because they are prohibited by Title 28, United States Code. Section 40.5, Code of Federal Regulations, dealing with standards for inmate grievance procedures, state ". . . the grievance procedure shall not be used as a disciplinary procedure." Petitioners claim that this federal rule prohibits the grievance procedure from being the appellate avenue for appeal from disciplinary action. Petitioners here are confusing the provisions of Title 42, U.S. Code 1997E, with the grievance certification process envisioned by the Attorney General of the United States. Mr. Brierton testified that the decision to seek certification by the Attorney General of Florida's grievance procedure was made with a view toward providing the best possible grievance procedure available. Seeking of certification, however, for this purpose, is voluntary and different from the requirement contained in Section 944.331 and 944.09, *Florida Statutes,* that the grievance procedure be in conformity with Title 42, United States Code, 1997. It has already been established that Florida's rule in question here does conform with the federal statute, and Mr. Brierton indicated that any defects in the current rule which prevented approval of certification previously have been corrected.

To save any appearance of impropriety, however, Respondents may wish to devise another procedure for the handling of appeals from disciplinary actions instead of using the formal grievance procedure. The rule could be amended to provide a formal "written appeal" to the installation superintendent outside the provisions of the grievance procedure. Such a provision may set time limits for the filing of an appeal and for the action by the appellate authority and may provide for investigation as necessary, and as presently incorporated in the grievance procedure.

In light of the above, therefore, and concluding that thought there may well be some avoidance of the spirit of the rule in the application by local lower level officials, there is no real substance to the complaint regarding the invalidity of the rule. The rule itself is appropriate as written and sustainable.

It is therefore ordered that the Petition to Determine the Invalidity

of Rule 33-3.007 and Rule 33-22.006(15), *Florida Administrative Code,* filed by Petitioners James L. Frederick and Douglas L. Adams, be dismissed.

DONE and ORDERED in Tallahassee, this 9th day of October, 1986.